UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JERMAINE SMITH,**

       **Plaintiff,**                     **Case No.:**

**v.**

**SSS DOWN TO EARTH OPCO, LLC,**

       **Defendant.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, JERMAINE SMITH, by and through his undersigned counsel and sues the Defendant, SSS DOWN TO EARTH OPCO, LLC, and states as follows:

**JURISDICTION AND VENUE**

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 1367.

2.  Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

**PARTIES**

3.  Plaintiff is a resident of Marion County, Florida.

4. Defendant is a Foreign Limited Liability Corporation authorized and doing business in this Judicial District. At all times material, Defendant employed Plaintiff. At all times material, Defendant employed the requisite number of employees and, therefore, is an employer as defined by 42 U.S.C. §1981.

## GENERAL ALLEGATIONS

5. At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal-protected rights.

6. At all times material, Plaintiff was qualified to perform his job duties within the legitimate expectations of his employers.

7. Plaintiff has retained the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

8. Plaintiff requests a jury trial for all issues so triable.

## FACTUAL ALLEGATIONS

9. Plaintiff is a Black/African American male.

10. On or about September 26, 2022, Plaintiff began his employment with Defendant as an Irrigation Technician.

11. During Plaintiff's employment with Defendant, Plaintiff did not receive any disciplinary actions from Defendant and understood that he was performing his job to Defendant's expectations.

12. Early in Plaintiff's employment with Defendant, Senior Lead Brendan (last name unknown) became hostile toward Plaintiff in the workplace.

13. On or about October 4, 2022, Senior Lead Brandon (l/n/u) called Plaintiff a "nigger."

14. Plaintiff promptly reported the racist comment to his supervisor, Jason McClain, as well as Branch Manager Scott (last name unknown) and Lindsay Taylor (Senior Office Manager). However, to Plaintiff's knowledge, nothing was done to address the racist comment.

15. In or around February or March 2023, Plaintiff's supervisor, Jason McClain, began harassing and discriminating against Plaintiff.

16. On or about February 8, 2023, McClain called Plaintiff and insinuated that Plaintiff took an Amazon package off a resident's porch.

17. In or around March 2023, Plaintiff asked McClain for a performance evaluation. McClain stated that he had the review as an item to bring forth in a weekly management meeting. However, McClain never followed up with Plaintiff regarding the review.

18. On or about June 13, 2023, McClain told Plaintiff that Senior Lead Brendan (l/n/u) received a performance evaluation and pay increase. Plaintiff reminded McClain about his request for an evaluation that he made several

months prior. McClain asked that Plaintiff remind him of it that Friday, June 16, 2023.

19. On or about June 19, 2023, Plaintiff asked Branch Manager Scott (l/n/u) if they could speak regarding a performance evaluation and pay raise. Scott (l/n/u) said yes, and they began to discuss.

20. McClain injected himself into the conversation and stated: "I'm not going to give your ass nothing now."

21. McClain left, then returned and injected himself into the conversation again. This time, McClain was more aggressive, spoke with expletives, threatened Plaintiff's employment, and put his hands in Plaintiff's face.

22. McClain then stated: "when a black man articulates with his hands, look for a gun next."

23. As Plaintiff was opposing McClain's behavior to Branch Manager Scott (l/n/u), McClain told Branch Manager Scott that if he chose to keep Plaintiff employed, then he would resign.

24. McClain continued his tirade and told Plaintiff that the only thing he expected Plaintiff to say was "yes sir" to any request he made to Plaintiff.

25. McClain repeated this but went further and stated that the only kind of black man that he would deal with is one who knows his place. McClain looked at Plaintiff and stated: "I expect you to just say 'yes sir' and go to work."

26. When Plaintiff continued to oppose McClain's behavior to Branch Manager Scott (l/n/u), McClain stated that Branch Manager Scott (l/n/u) needed to terminate Plaintiff, or he (McClain) would resign. McClain walked out, then returned and stated that five (5) other employees would quit unless Plaintiff was fired because McClain and other employees were intimidated by Plaintiff.

27. Plaintiff apologized to McClain if he intimidated him. McClain reached out to shake Plaintiff's hand and Plaintiff shook McClain's hand while giving him a hug. Plaintiff and McClain then went for a walk, had a discussion, and Plaintiff understood that everything was ok.

28. Ultimately, Branch Manager Scott (l/n/u) rewarded Plaintiff with a $1.00 per hour pay raise.

29. On or about June 23, 2023, after Plaintiff arrived at work, McClain approached Plaintiff and stated: "bro, that shit from Monday needs to never happen again."

30. Immediately, Plaintiff went to Branch Manager Scott (l/n/u), informed him of McClain's comment and asked if Scott was going to allow a repeat of June 19. Branch Manager Scott (l/n/u) told Plaintiff that McClain had a health condition that, when triggered, manifests erratic behavior. Plaintiff explained his concerns that Defendant's management seemed to make excuses and validate

McClain's behavior and comments. Lindsay Taylor was present for the conversation.

31. During the conversation, McClain came in and out of the room, raising his voice and telling Branch Manager Scott (l/n/u) that he needed to make a decision. McClain continued with his racist commentary, making similar comments as he made in the past. Specifically, that when a black man gestures, the next thing that comes is a gun and that a black man in the workplace is expected to say "yes, sir" and go work. At one point, Taylor pulled McClain from the room and talked to him, but the aggressive and racist behavior continued.

32. On the morning of June 26, 2023, Plaintiff submitted a written complaint of discrimination to Branch Manager Scott (l/n/u). The complaint outlined the incidents detailed above, stated that the increased workplace hostility had Plaintiff concerned for his well-being, and that his job and livelihood were being jeopardized "due to one's disapproval of my race."

33. A few hours later, Branch Manager Scott (l/n/u) sent Plaintiff a text message and informed him that someone from human resources was ready to speak with him.

34. Plaintiff then met with Noel (last name unknown) from human resources. Despite his written complaint from earlier in the day, Noel (l/n/u) did not ask Plaintiff a single question about his complaint, or the information

contained therein. Rather, Plaintiff was questioned about a transgender employee and comments that were allegedly made about the employee.

35. After the meeting, Branch Manager Scott (l/n/u) contacted Plaintiff and told him that "word" from human resources is that Defendant had to "sever ties [with Plaintiff] immediately." However, Branch Manager Scott (l/n/u) told Plaintiff that he was willing to provide Plaintiff with a reference.

36. On June 28, 2023, Taylor completed a Verification of Employment/Loss of Income form for the Florida Department of Children and Families. In that form, Taylor indicated the reason for Plaintiff's termination was a layoff.

## COUNT I
## 42 U.S.C. §1981 DISCRIMINATION

37. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-six (36).

38. Plaintiff, a Black/African American male, is a member of a protected class.

39. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his race by terminating Plaintiff's employment.

40. Defendant's adverse employment act toward Plaintiff was motivated by race-based considerations.

41. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

42. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

43. Defendant knew or should have known of the discrimination.

44. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

   a. Back pay and benefits;

   b. Interest on back pay and benefits;

   c. Front pay and benefits;

   d. Compensatory damages for emotional pain and suffering,

   e. Punitive damages;

   f. Attorneys' fees and costs;

   g. Injunctive relief;

   h. For any other relief this Court deems just and equitable.

## COUNT II
## 42 U.S.C. §1981—HARASSMENT

45. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-six (36).

46. Plaintiff, a Black/African American male, is a member of a protected class under 42 U.S.C. §1981.

47. The aforementioned actions by Jason McClain constitute unwelcome race-based harassment.

48. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

49. Defendant knew or should have known of the harassment of Plaintiff.

50. The aforementioned actions created a hostile environment and constitute discrimination on the basis of race, in violation of 42 U.S.C. §1981.

51. The race harassment and conduct of Jason McClain created a hostile work environment which interfered with Plaintiff's ability to perform his job.

52. Defendant's actions were intentional and encouraged an environment where degradation based on race was common and tolerated.

53. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

54. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

  b.  Prejudgment interest on back pay and benefits;

  c.  Front pay and benefits;

  d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

  e.  Punitive damages;

  f.  Attorneys' fees and costs;

  g.  Injunctive relief; and

  h.  For any other relief this Court deems just and equitable.

## COUNT III
## 42 U.S.C. §1981 – RETALIATION

55. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-six (36).

56. Plaintiff suffered an adverse employment action for engaging in protected activity under the 42 U.S.C. §1981. Specifically, Plaintiff opposed racial discrimination and made good-faith, reasonable complaints of discrimination based on his race and was terminated from his employment with Defendant.

57. The aforementioned actions by Defendant constitute retaliation by Defendant in violation of 42 U.S.C. §1981.

58. Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

59. Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

60. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e. Punitive damages;

    f. Attorneys' fees and costs;

    g. Injunctive relief; and

    h. For any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

61. Plaintiff demands a trial by jury on all issues so triable.

**DATED** this 15th day of September, 2023.

                                      **FLORIN GRAY BOUZAS OWENS, LLC**

                                      */s/ Gregory A. Owens*
                                      **GREGORY A. OWENS, ESQUIRE**
                                      Florida Bar No.: 51366

greg@fgbolaw.com
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804
wolfgang@fgbolaw.com
16524 Pointe Village Drive
Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*